

305 Broadway, Suite 1200
New York, New York 10007
(212) 385-1400
Fax: (212) 385-1401
firm@stephenslawny.com
www.stephenslawny.com

April 14, 2023

*Via ECF*
Hon. Ramon E. Reyes, Jr., USMJ
United States District Court
Eastern District of New York
225 Cadman Plaza, Room 1217S
Brooklyn, NY 11201

      Re:    Juan Najera v. Jerusalem Bedding Corp. et al,
                1:20-cv-06224-ERK-RER

Dear Magistrate Judge Reyes:

We represent Juan Najera, the Plaintiff in this wage and hour matter against Jerusalem Bedding Corp. E.P.E Enterprise Corp., Piero Tejada Magaña, and Christina Acevea ("Defendants"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). As the Court was advised on March 21, 2023, the parties have reached a settlement in principle following lengthy negotiations, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, on behalf of the parties, to explain the terms of the settlement with respect to Plaintiff's FLSA claims, and seek the Court's approval thereof,[1] in accordance with ***Cheeks v. Freeport Pancake House, Inc.***, 796 F.3d 199 (2d Cir. 2015), as well as an order dismissing this case with prejudice pursuant to Rule 41(a)(2).

    I.    **Procedural History and Settlement Agreements' Terms**

On December 23, 2020, Juan Najera ("Najera" or "Plaintiff") initiated this action seeking relief for Defendants' alleged violations of, *inter alia*, the overtime provisions of the FLSA. [Doc 1]. In the Complaint, Najera alleged that Defendants, A New York mattress and box spring manufacturer, employed him in the manufacture of box springs in New York City and in Linthicum, Maryland. Plaintiff's job duties cutting wood, constructing box spring frames, and

---

[1] Plaintiff also brings claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the parties' Agreements, do not require court approval for dismissal under **Cheeks**. *See, e.g.,* ***Gallardo v. PS Chicken Inc.***, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018). *See* ***Feliz v. Parkoff Operating Corp.***, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018).

upholstering box springs.

Defendants dispute the number of hours Plaintiff alleges that he worked each week and the wages Plaintiff alleges he was paid.

On March 21, 2023, the parties attended a mediation with James Brown, Esq., and reached an agreement in principle for the total amount of $29,000 ("Settlement Sum"), inclusive of attorney's fees and costs. The Settlement Sum is to be distributed as follows: one-third of the net settlement amount, after deducting expenses, to Plaintiff's counsel, The Stephens Law Firm, PLLC. The remaining two thirds of the net settlement amount will be paid to Plaintiff.

The Settlement Sum will be paid in four monthly installments beginning thirty days after approval of the Agreement, as set forth in **Exhibit A**. In the event of non-payment, Defendants agree that Plaintiff may apply to the Court, which will retain jurisdiction to enforce the agreement, for the entry of judgment in the amount of any unpaid balance, plus attorneys' fees and costs.

Regarding Plaintiff's counsel's fees and costs, counsel seeks approval of the total amount of $10,299.73, representing out-of-pocket litigation expenses of $949.60, and one-third or 33.33% of the *net* Settlement Sum after deducting expenses, amounting to $9,350.13. The remaining $18,700.27 will be distributed to the Plaintiff.

For the reasons described below, Plaintiff, on behalf of the parties, respectfully submit that the amounts and allocations, as well as all other terms, are fair and reasonable under the circumstances of this case.

## II.     The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed under Rule 41 if they are approved by the Court. ***Cheeks***, 796 F.3d at 206-07 (with prejudice); *see also* ***Samake v. Thunder Lube, Inc.***, 24 F.4th 804, 810 (2d Cir. 2022) (without prejudice). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." ***Kochilas v. Nat'l Merch. Servs., Inc.***, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.*

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in ***Wolinsky v. Scholastic, Inc.***, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), which the Second Circuit has twice recently endorsed. *See* ***Fisher v. SD Protection Inc.***, 948 F.3d 593, 600 (2d Cir. 2020); ***Yu v. Hasaki Rest., Inc.***, 944 F.3d 395, 413 (2d

Cir. 2019). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See* **Chen v. Xpres Spa at Terminal 4 JFK, LLC**, 2021 WL 4487835, at *4 (E.D.N.Y. Oct. 1, 2021) (Cogan, J.) (citing and applying *Wolinsky* factors). The parties submit that their settlements of Plaintiff's FLSA claims are fair and reasonable based on an analysis of the *Wolinsky* factors.

### a. Range of Possible Recovery

The settlement covered approximately five and one-half years of wages, of which approximately one and one-half years, from December 24, 2018, to June 25, 2020, represent FLSA wages. Thus, of the Plaintiff's initial calculation of wages owed of $55,064.04, $35,869.49 accrued during the FLSA window. **Exhibit B.** As such, the net settlement amount is essentially 81 percent of the amount Plaintiff claims was owed during the FLSA window.

### b. Avoiding Burdens and Potential Risks of Litigation

Here, the settlement amount of $29,000.00 is fair and appropriate in light of the considerable risks that Plaintiff faces. First, the Defendants dispute the number of hours Plaintiff alleges that he worked each week and the wages Plaintiff alleges he was paid. While Plaintiff disputes these assertions, the amount of recovery by Plaintiff could be significantly reduced if Defendants are able to prove that he worked fewer hours than alleged in the Complaint.

Additionally, Plaintiff believes that the present value of the settlement amount outweighs the value of potentially being awarded an undetermined amount months or years from now, after trial.

Furthermore, Defendants' business was greatly impacted by the COVID-19 pandemic. In fact, in his complaint, Plaintiff alleged that his hours were greatly curtailed as a consequence of the pandemic. Given the negative impact the pandemic has had on Defendants' business and the manufacturing industry generally, if Plaintiff were to prevail at trial, Plaintiff has legitimate concerns regarding his ability to collect on a hypothetical future judgment. Therefore, even if successful on his claims, Plaintiff faces the risk of not being able to recover his judgement. This settlement allays those concerns.

In short, there was significant risk for both parties to engage in protracted and costly litigation over these issues, with no guarantee of recovery.

In light of these risks, the Court should find that the settlement amount is reasonable. Based on Plaintiff's salary and the number of hours allegedly worked for Defendants during the relevant period, Plaintiff's counsel believes that the estimated settlement payments reflect a satisfactory recovery in this case, particularly in light of the of the length of time it would take to litigate this matter Defendants' ability to pay any judgment.

The contested issues in this case demonstrate there was no fraud or collusion in reaching the settlement.  *See* ***Meigel v. Flowers of the World, NYC, Inc.***, No. 11-cv-465 (KBF), 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ("[T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement").

As discussed, there were several contested issues that made the settlement of the claims asserted in this action difficult.  The parties exchanged numerous demands and counterproposals prior to reaching the settlement of this action during a formal mediation.  Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the Settlement Agreement.

      c. ***Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments***

As to whether the settlements are the product of arm's-length bargaining and are a reasonable, non-collusive resolution of the case, the settlement negotiations were protracted and concluded after a lengthy mediation through the District Court's mediation program.  There was no fraud or collusion here.  *E.g.,* ***Romero v. La Revise Assocs., L.L.C.***, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement").

Furthermore, the Agreement does not contain any terms that would militate against the Court approving them.  For instance, Plaintiff has not agreed to a general release of all claims, but rather, only a release of all wage claims under the FLSA and NYLL.  Likewise, the Agreement does not contain a confidentiality clause or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." ***Flood v. Carlson Restaurants Inc.***, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) citing ***Lopez v. Nights of Cabiria, LLC***, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015); *compare* ***Ezpino v. CDL Underground Specialists, Inc.***, 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (approving settlement agreement where it did not contain a confidentiality provision); *with* ***Gonzalez v. Lovin Oven Catering of Suffolk, Inc.,*** 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks*, 796 F.3d at 206 and declining to approve FLSA settlement containing a confidentiality provision).

    **III.**    <u>**The Requested Attorneys' Fees are Reasonable**</u>

In addition to assessing the reasonableness of the settlement amount, most courts since ***Cheeks*** have found that courts "must also assess the reasonableness of any attorneys' fee award." ***Velasquez v. SAFI-G, Inc.***, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015).  When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in

counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." ***Lliguichuzhca v. Cinema 60, LLC***, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013).

Here, the portion of the Settlement Sum attributable to attorneys' fees is $9,350.13, limited to 33.33% of the net Settlement Sum *after* reducing counsel's litigation expenses. While the Second Circuit has recently emphasized that in most "run of the mill" FLSA cases, "it does not make sense to limit fees to 33% of the total settlement," ***Fisher***, 948 F.3d at 603-604, courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-third of the total gross settlement, which is more than Plaintiff's counsel seeks here. *See* ***Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust***, 925 F.3d 63, 71 (2d Cir. 2019) ("[W]e have previously noted that the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully"); *see also* ***Cregg v. Firstservice Residential N.Y., Inc.***, Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015)(approving one-third attorneys' fees award as "the norm in this Circuit"); ***Calle v. Elite Specialty Coatings Plus, Inc.***, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); ***Thornhill v. CVS Pharmacy, Inc.***, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Additionally, the reasonableness of Plaintiff's counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See* ***Fresno County Employees' Retirement Assoc.***, 925 F.3d at ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee").  In order to calculate the lodestar check, counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See* ***Healey v. Leavitt***, 485 F.3d 63, 71 (2d Cir. 2007).  As of April 3, 2023, counsel has billed 109.5 hours in total on this matter - - an adversarial litigated case as detailed herein - - amounting to $35,740.00 in fees, an amount well in excess of counsel's attorneys' fees requested herein. This figure is based on hourly rates of: $350.00 per hour for Glendoval Stephens, Esq., Plaintiff's counsel's firm's managing attorney; $100.00 for the firm's paralegal; and $75.00 for the firm's legal/administrative assistant. Courts routinely approve these rates in similar cases. *See, e.g.*, ***Feuer et al. v. Cornerstone Hotels Corp. and Naeem Butt***, 2:14-cv-05388-JFB-SIL, Dkt. No. 121, Order (E.D.N.Y. Oct. 20, 2021); ***Caltenco v. G.H. Food Inc., d/b/a Natural Garden, and Gurdip Singh***, 1:16-cv-01705-VMS, Dkt. No. 112, Memorandum and Order (E.D.N.Y. Sept. 30, 2021). Plaintiff's counsel's contemporaneous billing records are attached hereto as **Exhibit C**.

Additionally, Plaintiff's counsel seeks reimbursement for out-of-pocket litigation expenses in the amount of $949.60, comprised of the initial filing fee, process server fee; printing and copying costs, professional search services, and mediator fees.  Plaintiff's counsel's expenses are detailed in the attached billing records. Accordingly, Plaintiff's counsel's request for a total of $10,299.73 is entirely reasonable.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court: dismiss all claims in this matter with prejudice, and retain jurisdiction to enforce the terms of the parties' Agreements should that become necessary. A proposed order of dismissal is attached hereto as **Exhibit D**.

We thank the Court for its time and attention to this matter.

                                                Respectfully submitted,

                                                */S/*

                                                Glendoval Stephens

C:   *All parties via ECF*